**S & P ENTERPRISES, INC.,**
**Plaintiff-Appellant,**

v.

**CITY OF MEMPHIS,**
**Defendant-Appellee.**

Court of Appeals of Tennessee,
at Jackson.

Dec. 30, 1983.

Application for Permission to Appeal
Denied April 2, 1984.

James D. Causey, Memphis, for plaintiff-appellant.

Marshall Gerber, Memphis, for defendant-appellee.

CRAWFORD, Judge.

Plaintiff, S & P Enterprises Co., Inc., appeals from the Chancery Court's "Final Decree Dissolving Injunction and Dismissing Complaint."

Plaintiff's complaint, filed October 4, 1982, against the City of Memphis for declaratory judgment and injunctive relief alleges generally as follows: that Ordinance No. 3215 passed by the City Council on August 17, 1982, amended Chapter 31 of the Code of Ordinances so as to revise and clarify certain sections of Article III relating to mechanical amusement devices; that the Ordinance was duly signed by the mayor and certified by the comptroller; that the fees for amusement devises are excessive and bear no reasonable relation to the costs of regulation; that the fee structure as adopted is a tax upon business and not a fee, is unfairly and unreasonably imposed by the City, and is in violation of the Due Process Clause of the Constitution of the United States; that the City is exercising its police power and there is no reasonable

relation between the regulation and the necessary expense in the fees as adopted; that the fees are not regulatory measures, but are in effect taxes. Plaintiff seeks a declaratory judgment that the Ordinance is unconstitutional and an injunction against its enforcement. The plaintiff attaches the Ordinance as an exhibit to the complaint, and we attach the Ordinance as an addendum hereto.

The City, in its answer, joined issue on the allegations of plaintiff concerning the constitutionality of the Ordinance, denied the allegations of plaintiff that the Ordinance is a tax, denied that the fees are excessive, and denied that the plaintiff is entitled to the relief sought. By consent of the parties, the case was considered by the court as on motion for summary judgment based on the pleadings and three affidavits filed on behalf of the City and resulted in a decree dismissing the temporary injunction granted plaintiff and dismissing the complaint.

The Chancellor found that there is a realistic relationship between the amount of revenue to be produced by the Ordinance and the cost of administering the Ordinance of the police personnel of the City. He further found that the primary purpose of the Ordinance was to control crowds, noise, disorders, and gambling among juveniles and adults and is therefore regulatory and not revenue producing.

The plaintiff has presented four issues for review by this court which we now consider.

■ 1. Whether Chapter 321 of the Public Acts of 1983 of the State of Tennessee prohibits the City of Memphis from imposing fees of whatever kind on the owners or lessors of mechanical amusement devices.

We note that Chapter 321 of the Public Acts of 1983 became effective January 1, 1984, having been passed by the Legislature May 4, 1983. This Statute had not been passed and was not effective in any way at the time this case was tried in the trial court. The issues before the Chancellor did not involve any controversy concerning the 1983 Public Acts of the State of Tennessee, and the Act of the Legislature passed subsequent to the trial of this case is irrelevant to the issues presented in the trial court and thus in this court. Accordingly, the first issue presented by plaintiff for review is without merit.

2. Whether the Memphis City Council exceeded its authority by imposing a privilege tax as opposed to a regulatory fee on the owners and lessors of mechanical amusement devices.

Plaintiff concedes that the City of Memphis has police power "over all affairs in the City in which peace, safety or general welfare is interested."

■ Also, the City is empowered to levy privilege taxes not exceeding the amount levied by the state, except as otherwise provided, Tenn.Code Ann. § 6–55–102 (1980), § 67–4–501 (1983).

Plaintiff asserts that the fee embraced in the Ordinance in question is in reality a privilege tax not authorized by the Charter of the City of Memphis or the Tennessee Code.

■ An occupational or a privilege tax embodies as its primary purpose the creation and collection of revenue while a true license fee as distinguished from such a tax should be fixed to cover the expense of issuing it, the service of officers and other expenses directly or indirectly incident to the supervision of the particular business or vocation. *See McMillan v. City of Knoxville*, 139 Tenn. 319, 202 S.W. 65 (1917).

■ Taxes are distinguished from fees by the objectives for which they are imposed. If the imposition is primarily for the purpose of raising revenue it is a tax; if it's purpose is for the regulation of some activity under the police power of the governing authority it is a fee. *Memphis Retail Liquor Dealers' Ass'n, Inc. v. City of Memphis*, 547 S.W.2d 244 (Tenn.1977).

■ The only evidence in the record is supplied by the affidavits filed by the City

in which it is established that the projected revenue from Ordinance is in the neighborhood of $225,000 and the projected expense for implementing the Ordinance is in excess of $227,000. While the record indicates that the projected expenses will in fact exceed the projected amount of fees collected, it is only required that the fees bear some reasonable relation to the expenses involved and it is no objection to a regulatory license that it produces more income than is required for its administration and enforcement. *See Memphis Retail Liquor Dealers' Ass'n Inc. v. City of Memphis, supra; City of Chattanooga v. Veatch,* 202 Tenn. 338, 304 S.W.2d 326 (1957).

Plaintiff also asserts that since the fee is assessed against the owner of the machine and not the owner of the establishment where the machine is located, the regulation or inspection of the machine is ineffective, thus indicating that the primary purpose is not regulation. This assertion is not supported by any proof, but on the contrary, the affidavits filed on behalf of the City establish that not only will the inspection and regulation of the machines not deteriorate by virtue of the Ordinance, but also by shifting the responsibility of obtaining permits from the location owner to the machine owner, requiring a sticker to be permanently affixed to the machines and allowing police personnel to obtain warrants, more machines could be licensed. It is further noted from the affidavits that there is a definite relationship in the type of enforcement required for the devices denoted Class A devices and the devices noted as Class B devices.

Based on the affidavits filed which constitute the only evidence before the court, we cannot find any dispute as to a material fact and the facts established do not support in any manner the assertions of plaintiff. Therefore, we find the second issue presented by plaintiff to be without merit.

■ The third and fourth issues we will consider together.

3. Whether Ordinance No. 3215's fee structure violates the Equal Protection Clause of the United States Constitution.[1]

4. Whether Ordinance No. 3215's fee structure violates the Due Process Clause of the United States Constitution.

Plaintiff puts forth two reasons supporting his assertion that no rational relation exists between the requirements of the Ordinance and the state interest of regulation of mechanical amusement devices: the fees are assessed against the owners of the machines and not against the owners of the businesses where the machines are located and the fees are exorbitant in comparison to other regulatory fees. We previously addressed the first reason, and we pointed out that the fees as charged bear a reasonable relation to the expense involved even though these fees may be different than those fees charged for a variety of other items such as vending machines, laundry machines, restaurants and snack bars. That one group is required to pay more than another group for the same privilege is not in and of itself a violation of the Equal Protection Clause. *Baldwin v. Fish & Game Commission of Montana,* 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978). (The Supreme Court upheld a nonresident hunting license fee of $225 while the residents' hunting license was only $9.) As pointed out there is no proof by the plaintiff as to whether there is in fact any difference in the fee charged for the various business activities, but, in any event, this court does not feel that any difference in the fees in these instances are relevant or material because of the difference in the items sought to be regulated.

Plaintiff also asserts that the Ordinance violates the due process clause of the Fourteenth Amendment to the United States Constitution in that there is no reasonable relation between the license fee imposed and the expenses for the regulation there-

1. It is noted by this court that the plaintiff did not allege a violation of the Equal Protection Clause in his complaint.

of. We previously addressed this above and find no merit to this contention.

■ There is a presumption in favor of the validity of an Ordinance, and the one questioning the validity of the Ordinance has the burden of proof to show its invalidity. *City of Jackson v. Hoyel*, 62 Tenn. App. 536, 465 S.W.2d 736, (1970) *cert. denied* 402 U.S. 946, 91 S.Ct. 1636, 29 L.Ed.2d 115 (1971). We find that the plaintiff did not meet the required burden of proof on either his equal protection or due process arguments.

The judgment of the trial court is affirmed and the costs are adjudged against the appellant.

NEARN, P.J. (W.S.), and HIGHERS, J., concur.

APPENDIX

ORDINANCE NO: 3215

AN ORDINANCE TO AMEND CHAPTER 31, CODE OF ORDINANCES, CITY OF MEMPHIS, SO AS TO REVISE AND CLARIFY CERTAIN SECTIONS OF ARTICLE III, RELATING TO MECHANICAL AMUSEMENT DEVICES.

SECTION 1. BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MEMPHIS, That Chapter 31, Code of Ordinances, City of Memphis, be and the same is hereby amended under Article III, as follows:

1. By deleting in Section 31–39, under "Definitions", the defining of "owner or operator" and substituting in lieu thereof a new definition as follows:

"Owner or Operator of a mechanical amusement device shall mean the owner or lessor of mechanical amusement devices for recreational use by the public."

2. By adding in Section 31–39, under the definition of "mechanical amusement device" the following language at the end thereof:

"Mechanical Amusement Devices shall be distinguished in the following two classes:

*Class Definition:*

Class A—shall include all mechanical amusement devices which display moving, still or video taped pictures; pool, bumper pool, and billiard tables; shuffleboard; music machines; electronic video; non-bingo type pinball machines; and other similar coin or token operated devices.

Class B—shall refer to any mechanical amusement device which simulates poker, black jack, bingo, or any similar gambling activity, even though such devices make no promise or provision for payoff. Nothing in this classification is intended to make legal or permissible the owning or operating of any gambling device defined in T.C.A. 39–2033.

3. By deleting Section 31–40 in its entirety, and substituting in lieu thereof a new section to read as follows:

"SECTION 31–40. SEAL OR TAG TO SHOW OWNERSHIP.

Every mechanical amusement device shall have a seal or tag permanently attached thereto showing the owner's name and business address."

4. By deleting the present section 31–54 and inserting in lieu thereof a new section to read as follows:

"SECTION 31–54. REQUIRED.

It shall be unlawful for any person to install, operate or allow to be operated any mechanical amusement device in the City without having first obtained a permit so to do from the Director of Police Services."

5. By deleting Section 31–55 in its entirety, and substituting in lieu thereof a new section to read as follows:

"SECTION 31–55. FILING AND CONTENT OF APPLICATION.

Application for the permit required by this division shall be made to the Director of Police Services on forms provided by him, shall be signed by the appli-

cant, and shall contain the following information and such additional information as is deemed necessary by the Director of Police Services:

Class A:

a. Business name and address, and telephone number.

b. Business owner and home address, and telephone number.

c. Number of machines for which permits are being requested.

d. Serial number(s) of machines for which permits are being requested (optional with applicant).

Class B:

Application for this type device should include the following:

a. Business name, address, and telephone number.

b. Business owner, home address, and telephone number.

c. Name of owner or operator of the business establishment in which the machine is to be operated, address and telephone number.

d. Home address and telephone number of establishment owner.

e. Number of machines which will be operated at the location.

f. Liquor license number and date of issuance, (if establishment is licensed to sell liquor).

g. Serial number(s) of machines for which permits are being requested (optional with applicant).

Once a location has been approved to operate Class B devices, the re-issuance of permits shall be handled in the same manner as Class A permits."

6. By deleting Section 31–56 in its entirety, and substituting in lieu thereof a new section to read as follows:

"SECTION 31–56. FEES.

A fee shall be charged for each mechanical amusement device permit issued. The fee shall be:

Class A ....................... $36.00
Class B ....................... 75.00

The applicant shall file an original and one (1) copy of an application for a permit under the provisions of this Chapter with the Director of Police Services. If the application is approved, it shall be marked "Approved by the Director." The applicant shall pay the appropriate fees and receive the permits and the original document stamped "fee paid". A copy of the application shall be retained by the Memphis Police Services (Police Department)."

7. By deleting Section 31–57 in its entirety, and substituting in lieu thereof a new section to read as follows:

"SECTION 31–57. APPROVAL OF APPLICATIONS FOR PERMITS BY DIRECTOR OF POLICE SERVICES; APPEALS FROM DENIALS.

The Director of Police Services shall approve the application for a permit unless:

(1) The owner of the mechanical amusement device or operator of the location for which the permit is being sought has been convicted of a criminal offense relating only to illegal gambling on mechanical amusement devices or illegally allowing minors to play mechanical amusement devices; or

(2) The electrical inspector has reported that the location is not capable of safely handling the electricity required for the operation of the machine(s).

Any person aggrieved by the action of the Director of Police Services in denying the permit shall have the right of appeal de novo to the City Council, provided such appeal is perfected within five (5) days from such denial. The action of the Council on such appeal shall be final."

8. By deleting Section 31–63 in its entirety, and substituting in lieu thereof a new section to read as follows:

"SECTION 31–63. POSTING OF PERMITS.

A permit or permits issued under this division shall be permanently and conspiciously attached to the machine or device for which it is issued."

9. By deleting Section 31–64 in its entirety, and substituting in lieu thereof a new section to read as follows:

"SECTION 31–64. TRANSFER OF PERMITS PROHIBITED.

No permit issued under this provision shall be transferable to any other device or machine."

10. By deleting Section 31–66 in its entirety, and substituting in lieu thereof a new section to read as follows:

"SECTION 31–66. RENEWAL OF PERMIT.

Permits issued under this division shall be renewed annually and the application for renewal shall be accompanied by the payment of the fee required for the type device prescribed. The renewal fee shall be paid each year by July 1, and will remain in effect through June 30, of the following year. Permits issued after July 1, shall be pro-rated to reflect the months remaining in the fiscal year."

11. By adding new Section 31–68, to read as follows:

"SECTION 31–68. LIST OF BUSINESSES TO BE PROVIDED QUARTERLY.

At the time of application, and at the beginning of each quarter thereafter, the machine owner shall be required to provide a list of all businesses, by location where he/she has machines placed."

SECTION 2. BE IT FURTHER ORDAINED, That, the provisions of this ordinance are hereby declared to be severable, and if any of its sections, provisions, sentences, phrases, or parts, be held unconstitutional or void, the remainder of this ordinance shall continue in full force and effect, it being the legislative intent now hereby declared that the ordinance would have been passed, even if such unconstitutional or void matter had not been included herein.

SECTION 3. BE IT FURTHER ORDAINED, That, this ordinance take effect from and after the date it shall have been passed by the Council, signed by the Chairman of the Council, certified and delivered to the Office of the Mayor in writing by the Comptroller, and become effective as otherwise provided by law.

J.O. PATTERSON, JR.
Chairman of Council

Attest:

Robert Tamboli, Comptroller